1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEFFERY L. DENNIS, individually, and Renee Canavan as the Personal Representative of the Estate of Wendy M. Dennis, | ) ) ) ) ) |
| | CASE NO: |
| | COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| TELSA, INC., | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiffs, Jeffery L. Dennis, individually, and Renee Canavan as representative of the estate of Wendy M. Dennis, complain of and allege the following causes of action against Defendant Tesla, Inc., (hereinafter called "Tesla"), as follows:

## I. OVERVIEW

1. This case arises from design defects in a Tesla Model 3 that caused a catastrophic crash killing Wendy Dennis and severely injured her husband, Jeff Dennis. Not only did defects in the Tesla vehicle cause the tragic crash, but other defects in the Tesla caused

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page   1

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

an explosive fire and prevented rescuers from removing Jeff and Wendy in time to prevent some of their horrendous harm.

2. Plaintiffs allege that the Tesla Model 3 had a defect that caused it to suddenly, and without warning or command from the driver, accelerate out of control. Although the driver skillfully avoided other vehicles, the Tesla eventually crashed into a utility pole.

3. Additionally, Plaintiffs allege that Tesla's decision to prevent its Automatic Emergency Braking (AEB) system from activating under these circumstances constituted negligence and gross negligence.

4. Plaintiffs further allege that because of defective batteries and battery pack design, the Tesla exploded into a raging fire upon impact with the pole. The battery chemistry and design unnecessarily increased the risk of this kind of catastrophic fire.

5. Plaintiffs also allege Tesla's unique and defective door handle design, which causes the door handles to become inoperable after a crash, prevented rescuers from removing Jeff and Wendy in time to prevent unnecessary further injuries.

6. Well before this tragedy, Defendant Tesla had received repeated notice that its vehicles were prone to Sudden Uncommanded Acceleration [SUA], explosive fires, whether triggered by a crash or occurring spontaneously, and that such fires were difficult and time-consuming to extinguish. Tesla also knew that its decision to prevent its AEB system from activating would allow otherwise preventable collisions to kill and maim people. Tesla knew that its reliance on electronic door systems created a serious risk of

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page 2

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

occupant entrapment after crashes. Owners, rescuers, and regulators had documented prior incidents where Tesla occupants survived crash forces but were unable to escape when power failed and fire ensued. Despite these warnings, Defendant Tesla continued to market and sell vehicles—including the subject vehicle—that predictably trapped survivors in foreseeable emergencies.

## II. FACTS

7.  On January 7, 2023, Plaintiff Jeffery L. Dennis was driving the 2018 Tesla Model 3, VIN 5YJ3E1EA9JF023043 (hereinafter "subject vehicle"), owned by Dennis and his spouse, Wendy M. Dennis, who was riding in the front passenger seat.  The Dennis's were out for a normal Saturday afternoon of shopping and errands.

8.  The Dennises were traveling westbound on South 56th Street, toward the intersection with South Washington Street, in Tacoma, Washington, when their Tesla Model 3 suddenly and rapidly accelerated out of control, continuing to accelerate faster and faster for at least 5 seconds before crashing into a utility pole on the northwest corner of South 56th and South Washington streets shortly after 1:00 PM.

9.  Video footage from a nearby business shows the Dennis' Model 3 rapidly accelerating and swerving to avoid hitting other vehicles as it sped out of control. At no time did the Model 3's Automatic Emergency Braking (AEB) system engage prior to it crashing into the utility pole.

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page   3

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

10. Immediately upon impact the Model 3 burst into flames, in what was only the beginning of an extremely hot fire that immediately engulfed the Model 3 and would burn for many hours before responders from the fire department were able to extinguish it completely.

11. Several bystanders ran to the vehicle and attempted to assist Jeff and Wendy Dennis but the Model 3's door handles would not operate – by design – making it impossible for anyone to open the doors from the outside of the vehicle. Several good Samaritans even attempted to use a baseball bat to break the car windows to help the Dennisses out of the burning vehicle. However, the increasingly intense fire forced them to distance themselves from the rapidly growing fire. They could only watch helplessly from a distance as the severely injured Jeff and Wendy burned in the inferno.



The Tesla as it struck the utility pole.

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

Page  4



Seconds after impact the Tesla exploded into flames.

12. First responders arrived on the scene several minutes later and extricated Jeff and
    Wendy Dennis from the vehicle, but not before Wendy had died and Jeff had suffered
    extreme burning of his legs, in addition to numerous other catastrophic injuries.

13. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332 because this action is
    between citizens of different states and the amount in controversy, exclusive of
    interest, attorneys' fees and costs, exceeds $75,000.

14. Venue is proper within this district pursuant to 28 U.S.C. §1391(b) as the events
    giving rise to this litigation took place in Pierce County, Washington.

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page  5

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

## IV. PARTIES

15. Plaintiff Jeffery L. Dennis is a citizen of the state of Washington, who at all times relevant to this action has resided in Tacoma, Pierce County, Washington.

16. Plaintiff Renee Canavan as representative of the estate of Wendy Dennis resides in Missouri.

17. Defendant Tesla, Inc. (hereinafter "Tesla") is a Delaware corporation and is headquartered in the state of Texas at 1 Tesla Road, Austin, Texas, and doing business in Washington with numerous Tesla retail locations where Tesla sells its vehicles directly to customers.

## V. PLAINTIFFS' FIRST CAUSE OF ACTION AGAINST TESLA

## PRODUCT LIABILITY

### (Wash. Rev. Code § 7.72.030)

18. Plaintiffs incorporate by reference each preceding and succeeding paragraphs as though fully set forth herein.

19. Tesla designed, manufactured, researched, tested, assembled, installed, marketed, advertised, distributed and sold the 2018 Tesla Model 3, with Vehicle Identification Number 5YJ3E1EA9JF023043 (the "subject vehicle"), and as such, Defendant is both a "manufacturer" and a "seller" pursuant to Washington Revised Code § 7.72.

20. Tesla designed, manufactured, researched, tested, and assembled the subject vehicle in the state of California while Tesla kept its official headquarters there. (Tesla later

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page 6

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

moved to Texas but was still based in California when the subject vehicle was designed and built).

21. Like all Tesla vehicles, the Tesla Model 3 is a "computer on wheels," a highly advanced automobile fitted with hardware and software designed to effectively automate as many of the automobile's features as possible.

22. But automated driving systems are only as good as the hardware, engineering, and programming of the onboard computers used to execute it. Computers and software frequently come with bugs, glitches, and unanticipated problems that cause their computers to unexpectedly crash, malfunction, or work differently than intended. These bugs are serious enough when located in a stationary box on a user's desk—they are magnified exponentially when a computer controls a more than two-ton moving machine capable of accelerating from 0 to 60 miles per hour in under five seconds. In these circumstances, the consequences of computer "bugs" and "glitches" can be catastrophic, as in the case of the Dennis family's Tesla.

23. At all times relevant to this action, Tesla knew that the subject vehicle would be operated and inhabited by consumers like Plaintiffs without inspection for defects.

24. At the time of this collision, the subject vehicle was being used by Plaintiffs in a manner and fashion that was foreseeable by Tesla, and as it was intended to be used.

25. The subject vehicle was not reasonably safe as designed and manufactured because, at the time of its manufacture, the likelihood the product would cause harm to a driver

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page 7

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

and/or passengers, including the Plaintiffs, and the seriousness of those harms outweighed the burden on the Tesla to design a vehicle that would have prevented those harms, and instead Tesla chose to expose Plaintiffs and other users of the subject vehicle to those harms, including serious and horrific catastrophic injuries and in some cased, violent and horrible death.

26. Plaintiffs' harm was proximately caused by Tesla's negligence in that the subject vehicle was not reasonably safe as designed and lacked adequate warnings or instructions.

27. The subject vehicle was not reasonably safe as designed because, at the time of manufacture, the likelihood that the vehicle would cause Plaintiffs' harm or similar harms, and the seriousness of those harms, outweighed the burden on Tesla to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the subject vehicle.

28. The subject vehicle was not reasonably safe because Tesla failed to provide adequate warnings or instructions after the vehicle was manufactured because Tesla learned or reasonably should have learned about dangers concerning the vehicle after it was manufactured. Tesla had a duty issue warnings or instructions concerning the dangers in the manner that a reasonably prudent manufacturer would have under the circumstances. Tesla failed to exercise reasonable care to inform users of the subject vehicle of its dangers.

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page  8

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

29. Tesla is strictly liable for Plaintiffs' damages because Plaintiffs' damages were proximately caused by the fact that the subject vehicle was not reasonably safe in construction.

30. The subject vehicle was unsafe to an extent beyond that which would be contemplated by the ordinary user.

31. The Plaintiffs were not aware of the unsafe conditions of the subject vehicle, and as a proximate and foreseeable result Plaintiffs sustained the catastrophic injuries and damages set forth herein, for which Tesla is strictly liable.

32. Based on the foregoing, the Plaintiff is entitled to damages in an amount to be proven at the time of trial.

33. These defects concerning the subject vehicle included:

**A. Tesla Knows Its Vehicles Experience Sudden Un-Commanded Acceleration**

34. As Tesla has moved further toward the goal of computer-guided driving, one of the problems that continues to manifest in Tesla vehicles is that they accelerate suddenly and without explanation, absent any driver direction or command. This sudden uncommanded acceleration ("SUA"), in which a Tesla vehicle accelerates to full power even though the driver reports that he or she did not command the acceleration by pressing the accelerator pedal (the "SUA Defect"), has manifested in every Tesla model line to date at rates that far exceed historical rates for any other vehicles. Unfortunately, the Dennis family's Model 3 appears to have the same SUA Defect as

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page 9

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

other Tesla models.

**35.** Members of the public report that SUA has been and remains a problem with Tesla vehicles. The most important source of field data regarding this issue is the National Highway Traffic Safety Administration's Consumer Complaint Database. The National Highway Traffic Safety Administration (NHTSA) maintains the Vehicle Operator's Questionnaire (VOQ) database, which tracks consumer complaints. Anyone can submit a complaint online or by phone. The VOQ has been in operation for more than 20 years and has been used by NHTSA and others for investigation of possible car defects.

36. According to a study by NASA of uncommanded acceleration reports to the National Highway Traffic Administration from 2000 to 2010, there rate of SUA incidents was 1 per 100,000 vehicles per year.

37. By comparison, within the first year of Model X vehicles being on the road, and with only 18,240 Model X vehicles in use (the vast majority of which had been on the road significantly less than one year), there were thirteen (13) reported incidents of Sudden Uncommanded Acceleration—a staggeringly high rate of SUA incidents of 71 per 100,000 vehicles per year—**seventy times** the average reported to NHTSA.

38. From September 2016 through June 2020, 192 consumer complaints were submitted to NHTSA describing SUA events by Tesla vehicles. According to the auto industry publication InsideEVs, Tesla sold approximately 543,540 vehicles in the United States

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200

Page   10                                    celia@riveralawoffices.com

from 2013-2019, with over half of those having been sold since 2018. Thus, the number of Tesla SUA incidents per 100,000/year is many multiples of the historical 1 SUA incident per 100,000 per year that NHTSA has historically reported.

39. The 192 complaints are striking in the similarity of the descriptions of the circumstances under which SUA events occur. They are also alarming in that the incidents reflected in these complaints indicate that SUA events involving Tesla vehicles have caused 171 crashes and injured 64 people.

40. They are also striking in how they are distributed across all Tesla models and model years.

41. As of April 2021, there were at least 52 SUA complaints to the NHTSA regarding Model3s and at least 150 SUA complaints regarding other Tesla models. As of April 2021, there were at least 52 SUA complaints to the NHTSA regarding Model3s and at least 150 SUA complaints regarding other Tesla models. **Tesla vehicles have 6.1 times the number of complaints made to NHTSA of SUA compared to the average of all passenger cars and light trucks sold in the United States.**

**B. Tesla Designed its Automatic Emergency Braking System to Fail**

42. Tesla equips its vehicles with systems that should prevent just this kind of accident. Tesla included a feature called Automatic Emergency Braking ("AEB"), wherein the vehicle's computer system uses its forward-looking camera and the radar sensor to determine the distance to objects in front of the vehicle. When a frontal collision is

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page  11

considered unavoidable, the AEB system is designed to automatically apply the brakes to reduce the severity of the impact. This is a major selling point, as Tesla trumpets this capability as a safety feature, distinguishing Tesla vehicles from other automobiles.

43. Model 3 Owner's Manual:

## Automatic Emergency Braking

The forward looking camera(s) and the radar sensor are designed to determine the distance from a detected object traveling in front of Model 3. When a frontal collision is considered unavoidable, Automatic Emergency Braking is designed to apply the brakes to reduce the severity of the impact.

44. Further, the Owner's Manual states that AEB operates when the vehicle is going between approximately 7 mph and 90 mph.

Automatic Emergency Braking operates only when driving between approximately 7 mph (10 km/h) and 90 mph (150 km/h).

45. However, the AEB system apparently has been designed and programmed to deactivate when it receives instructions from the accelerator pedal to drive full speed into a fixed object. The Model 3 vehicle does not automatically apply the brakes, or will stop applying the brakes, "in situations where you are taking action to avoid a potential collision." These situations include the driver turning the steering wheel sharply, pressing the accelerator pedal, or pressing and releasing (or pumping) the brake pedal.

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page 12

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

46. What this means is that the Model 3's computer acts the same way any time the computer believes—rightly or wrongly—that the driver is commanding full throttle acceleration directly into fixed objects immediately in front of the vehicle. The upshot is that Tesla has designed and manufactured a vehicle capable of accelerating from zero to 60 miles per hour in under 5 seconds—acceleration previously achievable only in a select number of exotic sports cars—and equipped the vehicle with the ability to sense objects in its path and brake automatically to prevent or minimize frontal impacts. But despite all these features, Tesla has programmed these systems to allow the Model 3 to engage with full throttle acceleration into fixed objects, such as walls, fences, beams, and poles.

47. Tesla's failure to resolve the SUA problem in the Model 3 and its other vehicle models —or to at least mitigate the problem by building in a fail-safe braking mechanism to prevent collisions such as Plaintiffs'—is inexplicable. It is made worse by Tesla's apparent response to simply blame the driver—a response consistent with other automobile manufacturers far less technologically advanced and savvy than Tesla. But blaming the driver is not an acceptable excuse. The circumstances described above have now led to the catastrophic injuries and death alleged by the Dennis family. In fact, had it not been for the skillful efforts of Mr. Dennis to steer the speeding Tesla away from other vehicles, other innocent bystanders might have been injured or killed. Tesla must be held responsible for the damage caused and created by its unsafe vehicle.

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

Page  13

## C. Tesla's Battery Design Is Dangerously Defective

48. The Dennis family asserts that defects in the design of the vehicle's battery configuration and chemistry caused the Tesla Model 3 to explode upon impact with the traffic signal pole. These defects include, but are not limited to, the following:

    a.  The vehicle's high voltage battery pack contains thousands of highly explosive batteries and Tesla's design unnecessarily exposed a significant number of the batteries to catastrophic damage in a frontal impact with a narrow object.

    b.  Tesla placed portions of the battery pack where they were unnecessarily vulnerable to frontal impact.

    c.  Tesla negligently placed lithium-ion batteries in battery packs without using adequate insulative material to reduce or eliminate the likelihood of thermal runaway, a known risk, which is what caused the vehicle to explode into flames upon impact.

    d.  Tesla used a highly explosive battery chemistry when there were other available, feasible, and less expensive battery chemistries that would have greatly reduced the likelihood of an explosive fire such as occurred. Tesla used a far safer battery chemistry in its Model 3 vehicles manufactured and sold in China.

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page 14

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

e.  Tesla's choice of design, battery insulation, and chemistry caused the vehicle to explode and resulted in a hard-to-extinguish fire which unnecessarily prevented the rescue of Mrs. Dennis and delayed the rescue of Mr. Dennis before the vehicle's fire caused him catastrophic injuries.

f.  Tesla also negligently failed to adequately test its revolutionarily new design to determine the safety of the vehicle's fuel system, i.e., the battery pack.

49. These defects created substantial dangers which were unknown to the Dennisses and the public in general, nor would they be recognized by the ordinary user. Tesla failed to use feasible safer alternative designs and failed to give adequate warnings of the dangers associated with the inherent risks of its defective designs.

50. Tesla has known of this defect since before 2010, when Tesla filed patents on fire retardant material to try to limit the tendency of lithium-ion batteries to experience rapid thermal runaway. However, Tesla vehicles continue to explode at a much higher rate than any other electric vehicle on the market.

51. Tesla has known since 2013 that rapid thermal runaway was not just a theoretical possibility. Real world events began occurring,[1] some of which were deadly.[2]

_____

[1] A driver reported that he hit debris in the road in Kent, Washington, on October 1, 2013, and his Model S became disabled and then caught on fire. https://www.seattletimes.com/business/tesla-says-car-fire-began-in-battery-after-crash/; https://www.youtube.com/watch?v=q0kjI08n4fg  (Note: some explicit language in video)

[2] A driver was killed on March 23, 2018, when his Model X crashed into a concrete highway divider in Mountain View, California, and caught fire. https://www.bloomberg.com/news/articles/2018-03-31/tesla-says-driver-s-hands-weren-t-on-wheel-at-time-of-accident

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page  15

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

52. Tesla vehicles have seen numerous and frequent complaints of fires related to their unstable and inadequately protected batteries. This has resulted in fires that have ignited spontaneously or when impacted, have been difficult to extinguish, and have frequently reignited after having been extinguished. Tesla has been aware of this dangerous safety issue and has failed to make safety a priority despite having had access to safer battery protection innovations for many years, including its own patent for an intumescent fire retardant.[3]

### D. The Tesla Door Handle Design Unnecessarily Prevented Rescue

53. Tesla employs a unique door handle design that provides electronic exterior handles that lie flush with the vehicle. Inside, they open the doors with a push of a button. All this only happens IF the batteries are providing electricity. However, the batteries are designed to shut off in the event of a crash.

54. Outer door handles on Tesla's also depend on battery power to operate. When those fail due to lack of charge or an emergency like a collision, it can have fatal consequences.

55. To open the doors from outside the vehicle when the electricity is off requires the breaking of a window. When the car's batteries explode, it quickly becomes too hot for rescuers to react effectively. Potential rescuers expect to be able to open the car's doors with the handles. Unless they have been specifically trained about Tesla's

_____
[3] http://www.patentsencyclopedia.com/app/20100086844; https://patents.google.com/patent/EP2577768A4/un

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page  16

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

electric door latch design, they wouldn't know that the only way to get into the car is to break a window.

56. Interiorly, the Tesla doors open by pushing a button. However, again, this only works IF the batteries are supplying power to the door handle. Otherwise, there is a manual release that is not associated with the usual release button. If occupants haven't been informed about where to find and operate the manual release mechanism, they become trapped in the vehicle.

57. By far the most critical danger precipitated by faulty handles leads to entrapment by occupants, preventing passengers from being able to escape from the interior while at the same time hampering the efforts of others outside the vehicle to be able to free them. The foreseeable risk of serious injury or death resulting from this defect was obvious and should have been readily apparent to any reasonably competent design engineer. The danger posed by power loss during a crash, followed by fire, is not speculative—it is a predictable and well-documented hazard. Defendant Tesla failed to provide adequate instructions or warnings that would have alerted users, including non-owners unfamiliar with the vehicle's design, to the existence and use of the hidden manual release.

58. Defendant Tesla cannot credibly claim ignorance of the fact that the mechanism is defective in its design and further defective because of its inadequate instructions or warnings. After the release of the subject vehicle but before the time of the subject collision, customers repeatedly raised the defective design and its inadequate

instructions or warnings as a safety concern. For nearly a decade before the crash, Defendant Tesla had repeated and direct notice that its reliance on electronic door systems created a serious risk of entrapment. Owners, bystanders, and first responders documented instances where Tesla occupants survived crash forces but could not escape when electrical power failed and fire ensued.[4] Firefighters and rescuers reported occasions where they were unable to save occupants because the doors would not open once power was lost.[5] Consumers lodged dozens of complaints with the National Highway Traffic Safety Administration ("NHTSA"), repeatedly documenting their horror upon discovering—often too late—that the doors cannot be opened when power fails.

59. A sample of a multitude of ongoing complaints through various online TESLA forums show the preponderance of costly defective door handles as well as owners' concerns over safety due to these defects.[6]

60. The defective and unreasonably dangerous condition of the subject vehicle was a cause and a substantial factor in the fatal injuries of Wendy Dennis and the injuries to Jeff Dennis.

---

[4] https://www.tesla-fire.com/

[5] See, e.g., https://www.nhtsa.gov/?nhtsaId=11591608; https://www.nhtsa.gov/?nhtsaId=11592780; https://www.nhtsa.gov/?nhtsaId=11614665; https://www.nhtsa.gov/?nhtsaId=11111289; https://www.nhtsa.gov/?nhtsaId=11317593; https://www.nhtsa.gov/?nhtsaId=11460242; https://www.nhtsa.gov/?nhtsaId=11473540. All the herein listed NHTSA ID reports are available at www.nhtsa.gov .

[6] https://teslamotorsclub.com/tmc/threads/door-handle-failures.97673/page-3; https://forums.tesla.com/forum/forums/door-handle-problems-0; https://teslamotorsclub.com/tmc/threads/drivers-door-cant-open-from-outside.62182

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

61. At the time of the subject incident, the subject vehicle was being used in a manner reasonably foreseeable to Defendant Tesla.

62. As a result of the defective and unreasonably dangerous condition of the subject vehicle, Jeff and Wendy Dennis sustained enhanced injuries.

63. Defendant Tesla's design defects enhanced Jeff and Wendy Dennis' injuries and were a substantial factor in causing Wendy's death by preventing their rescue.

64. Without Defendant Tesla's design defects, Jeff and Wendy Dennis would have survived and had a chance to escape the subject vehicle after the crash.

65. The above-described defects caused or substantially contributed to causing the Plaintiffs' damages as set out below.

## PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES

### Under California Civil Code of Procedure section 3294(a).

66. Plaintiffs re-allege the foregoing as if fully set forth herein.

67. The Subject Vehicle was designed, engineered, tested, and manufactured in California.

68. Washington law allows application of another state's punitive damage law if that state has an interest in regulating a defendant's conduct.

69. California has a strong interest in regulating the conduct of manufacturers who put dangerously defective products on the market.

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page  19

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

70. California Civil Code of Procedure (CCCP) section 3294(a) provides that a plaintiff may recover punitive damages where the defendant acted with malice, oppression or fraud – disjunctive terms, each of which can support an award of punitive damages.

71. In this case Tesla acted with malice, oppression or fraud in putting the Subject Vehicle on the market and concealing defects Tesla knew about and failed to correct prior to both the manufacture of the Subject Vehicle and the Subject Incident.

72. Tesla's wrongful conduct as described herein was motivated by unreasonable financial gain, with disregard for the safety and well-being of the motoring public, including decedent and was done so with malice, oppression and/or fraud.

73. The unreasonably dangerous nature of Tesla's conduct, together with the high likelihood of injury resulting from the conduct, was known by the managing agent, director, officer, or other person responsible for making policy decisions on behalf of Tesla.

74. At the time of the Subject Incident, Tesla knew its vehicles were prone to sudden uncommanded acceleration and failed to either correct this defect or warn of its existence.

75. At the time of the Subject Incident, the Subject Tesla failed to properly detect and/or effectively respond to the presence of the utility pole into which the Subject Tesla crashed.

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

Page 20

76. The Subject Vehicle's AEB systems failed to engage any braking, deceleration, or steering to prevent this fatal collision.

77. Tesla knowingly programed its AEB system to fail under the circumstances involved in this case.

78. Tesla knew that its vehicles had an extremely high rate of complaints of sudden uncommanded acceleration yet programmed its AEB system to not activate if any acceleration was detected by the vehicle's sensors.

79. Tesla knew that the Subject Vehicle's defective fuel system, i.e., battery pack, design and placement drastically increased the likelihood of a catastrophic fire, such as occurred in this case.

80. Tesla knew that the Subject Vehicle's design failed to adequately protect the battery pack from damage likely to result in a catastrophic fire, such as occurred in this case.

81. Tesla failed to perform adequate testing of its radically new and experimental design to ensure the design effectively protected the vehicle's battery pack from frontal pole collisions such as the one involved in this case.

82. Tesla, through its officers, employees, and agents, knew that the Subject Vehicle had a collision avoidance system that was not fully tested for safety.

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page 21

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

83. Tesla further knew that its unique door handle design had been blamed for numerous instances of people being trapped in their vehicles and instances of rescuers being unable to open the Tesla vehicle doors because of the door handle's defective design.

84. Despite knowing of these deficiencies, Tesla advertised its vehicles in a way that greatly overestimated their capabilities and hid their deficiencies, including but not limited to the following:

   a. Tesla engaged in malicious and/or fraudulent practices within the meaning of CCCP section 3294(a) by misrepresenting the nature of and safety of its products including but not limited to Tesla's vehicles, hardware, software, door handles, battery configurations, and battery technology as set forth in this Complaint, including but not limited to the following:

      i.   Tesla falsely overstated the safety of its vehicles.

      ii.  Tesla falsely overstated the performance capabilities of its vehicles.

      iii. Tesla knows that its vehicles are defective and unsafe but represents that they are safe.

      iv.  Tesla has known throughout the time it has marketed and sold its vehicles that Tesla's fire safety systems were defective and unsafe but represented to the public that these systems increase safety.

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

Page 22

v.  Tesla's customers are for the most part untrained in understanding the inherent dangers involved with the door handle technology.

vi. Tesla tells its customers that they are safer when driving a Telsa than they would be if they were driving another kind of vehicle.

vii. Tesla has falsely claimed that it can prove Tesla vehicles are safer than other vehicles.

viii. Tesla knows it cannot prove Tesla vehicles are safer than other vehicles.

ix. The statistics Tesla publishes on its website to support its fire safety claims are false.

x.  The statistics Tesla uses to support its fire safety claims are misleading.

xi. Tesla knows that the statistics it uses to support its fire safety claims are false.

xii. Tesla knows that the statistics it uses to support its fire safety claims are misleading.

xiii. Tesla has unconscionably left its dangerously defective vehicles on the market and on public streets and highways knowing it has not adequately remedied the vehicles' defects.

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

Page 23

b. Tesla and its Officer(s) have made numerous false and/or misleading statements overstating the safety of Tesla vehicles, including but not limited to the following:

i.    "At Tesla, we believe that technology can help improve safety. That's why Tesla vehicles are engineered to be the safest cars in the world. We believe the unique combination of passive safety, active safety, and automated driver assistance is crucial for keeping not just Tesla drivers and passengers safe, but all drivers on the road."

ii.    "Because of their strength, Tesla's battery packs rarely incur serious damage in accidents. And, in the extremely unlikely event that a fire occurs, the state-of-the-art design of our battery packs ensures that its safety system works as intended and isolates a fire to select areas within the battery while simultaneously venting heat away from the passenger cabin and the vehicle."

iii.    "Active safety features come standard on all Tesla vehicles made after September 2014 for an added layer of safety beyond the physical structure of each car. Because every Tesla is connected, we're able to use the billions of miles of real-world data from our global fleet – of which more than 9 billion have been driven with Autopilot engaged – to understand the different ways accidents happen. We then develop features that can help Tesla drivers mitigate or avoid accidents."

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

Page 24

iv.   "Our global data indicates that, between 2012 and 2023, approximately one Tesla vehicle fire event occurred for every 135 million vehicle miles traveled. By comparison, data from the NFPA and U.S. Department of Transportation indicate that one vehicle fire occurs in the United States for every 17 million miles traveled. Compared to average vehicles on the road, Tesla vehicles are comparatively even less likely to be involved in a fire event than these numbers suggest, because Tesla's data includes fire events that are caused by structure fires, wildfires, arson, and other causes unrelated to the vehicle, whereas the NFPA data excludes any fires where a structure is involved."  [This claim is baseless.]

85. At all times material hereto and prior to the Subject crash, Tesla had specific knowledge through its officers, directors, managers and/or other employees/agents, including its CEO Elon Musk, that its product was defective in all the ways described herein.

86. At all times material hereto and prior to the Subject crash, Tesla had specific knowledge through its officers, directors, managers, or other employees/agents, including its CEO Elon Musk, that its product was defective based on, among other things, inadequate design, testing, and manufacture.

87. At all times material hereto and prior to the Subject crash, Tesla had specific knowledge through its officers, directors, managers or other employees/agents,

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

Page  25

including its CEO Elon Musk, that its product was defective based on numerous prior similar incidents and collisions in which its systems on Tesla vehicles partially or completely failed, causing significant property damage, severe injury and catastrophic death to their occupants and/or the public.

88. At all times material hereto and prior to the Subject crash, Tesla failed to correct its defective product and instead continued to mislead the public as to the purported capabilities and safety of the product through the public statements of the company and statements by its CEO Elon Musk, despite having the foregoing knowledge.

89. Tesla had knowledge that the defects described herein were inherently dangerous to persons and property and that the continued use of vehicles such as the Subject Vehicle was likely to cause injury or death, but Tesla nevertheless continued to market the product without making feasible modifications to eliminate the dangers or making adequate disclosure and warning of such dangers.

90. The conduct of Tesla was motivated by financial gain and by a desire to gain market share. Tesla and its CEO, Elon Musk, specifically made the decision to continue to profit from the sales of their defective vehicles without taking the appropriate steps to ensure the safety of their occupants and others.

91. At all times material hereto, Tesla's conduct was done so with malice, oppression and/ or fraud.

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page 26

92. At all times material hereto, Tesla had actual knowledge of the wrongfulness of its conduct and the probability that injury or damage to people such as Mr. and Mrs. Dennis, and, despite that knowledge, acted with malice, oppression and/or fraud, resulting in the catastrophic injuries to Jeff Dennis, the death of Wendy Dennis, and Plaintiffs' damages as set forth herein and which will be described fully at trial.

93. As a direct and proximate result of the of Tesla's willful and conscious disregard of the rights or safety of others, including decedent and Plaintiffs and its acting with malice, oppression and/or fraud, Plaintiffs suffered the damages set out herein and are entitled to punitive damages according to proof at the time of trial.

### PRAYER FOR RELIEF

94.  WHEREFORE, Plaintiffs respectfully request that this Court:

    a.  Award damages to Plaintiff Jeff Dennis Individually compensating him for his injuries and past, present, and future economic and non-economic damages in amounts to be proven at trial; including but not limited to:

        i.  Past and future medical expenses,

        ii.  Past and future lost wages,

        iii. Past and future lost household services,

        iv. Past and future attendant care,

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page 27

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

> > v.   Past and future prosthetics,
>
> > vi. Past and future pain and suffering, embarrassment, emotional distress, disfigurement, disability, lost social opportunities, and lost enjoyment of life.

> b.   Award damages to Plaintiff Jeff Dennis Individually for his damages resulting from the wrongful death of his spouse, Wendy Dennis, including but not limited to:

> > i.   Past and future loss of Wendy Dennis' income, benefits, and financial support,
>
> > ii.  Past and future loss of Wendy Dennis' household services,
>
> > iii. Past and future loss of consortium,
>
> > iv.  Past and future loss of companionship, love, and affection,
>
> > v.   Past and future emotional distress, grief, and sorrow.

> c.   Award damages for the wrongful death of Wendy Dennis to the Estate of Wendy Dennis for all economic loss, including expenses related to her death, including but not limited to funeral and burial expenses, past and future lost income, and other benefits she would have earned in the future.

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page  28

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com

d.  Award all actual, general, special, incidental, statutory, and consequential damages and restitution to which Plaintiffs are entitled.

e.  Treble damages under RCW 19.86.090 against Defendant Tesla.

f.  Award pre-judgment and post judgment interest on such monetary relief.

g.  Award reasonable attorneys' fees and costs; and

h.  Grant such further relief that the Court deems appropriate.

### DEMAND FOR JURY TRIAL

95.  Plaintiffs demand trial by jury on all issues so triable.

DATED this 21st day of November, 2025,


 s/Celia M. Rivera
Celia M. Rivera  WSBA# 30342
Attorney for Plaintiff
Rivera Law Offices, PLLS
1800 Cooper Point Rd SW #114
Olympia WA 98502
Tel. 360-705-8200
celia@riveralawoffices.com


s/Peggy Underbrink
Peggy Underbrink, WSBA #38996
Attorney for Plaintiff
Peggy Underbrink, Attorney at Law
PO Box 2463
Bellingham WA 98227
Tel. 888-811-0391
peggy@peggyulaw.com

COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL.

Page  29

**RIVERA LAW OFFICES, PLLC**
1800 Cooper Point RD SW #14, Olympia WA 98502
Tel: (360) 705-8200
celia@riveralawoffices.com